UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE SUCCESSION OF MABEL ISABEL MOLERO QUATROY | CIVIL ACTION |
| | NO. 04-0695 |
| VERSUS | |
| | SECTION "T" |
| BASS ENTERPRISES PRODUCTION CO. | |
| | MAGISTRATE 5 |

**ORDER AND REASONS**

Plaintiff, the Succession of Mabel Isabel Molero Quatroy, filed a Motion for Summary Judgment on behalf of the Mabel Isabel Molero Quatroy Revocable Living Trust ("the Trust"). The Summary Judgment is limited to the concursus/interpleader issues whereby Bass Enterprises Production Company and/or Exxon has deposited various sums in the registry of the Court and has named the Mabel Isabel Molero Quatroy Revocable Living Trust, the Succession of Mabel Isabel Molero Quatroy, Bank Plus and Michael Donnelly as defendants in interpleader. The Summary Judgment is to assert the Trust's rights to the funds deposited into the registry of the Court. Defendant in interpleader, BankPlus, filed a cross Motion for Partial Summary Judgment to assert its rights to the funds deposited into the registry of the Court. The matter was taken under submission on July 13, 2005. The Court, having studied the legal memoranda submitted by both parties, the Court record, the law, and applicable jurisprudence, is fully advised and

1

ready to rule.

I. **BACKGROUND**

Mabel Isabel Molero Quatroy ("Ms. Quatroy") owned various royalty interests and overriding royalty interests arising out of production on her property. One such company from whom she owned an interest was Bass Enterprises Production Company and its co-operator, Exxon. As her health began to fail, Ms. Quatroy executed a Power of Attorney on April 30, 2000 in favor of her niece, Dorothy Benge. The power of attorney is a full and complete Power of Attorney and authorized Ms. Benge to, among other things:

> sell, quitclaim, donate, partition, exchange, compromise, mortgage, assign, lease and/or pledge any or all property, interests or rights of any kind owned, or to be owned, acquired by PRINCIPAL, including rights in corporeal and incorporeal property, movables and immovables (specifically including all real estate interests owned by PRINCIPAL, wherever located), and to receive and receipt for any sums or rights received thereby.

After the Power of Attorney was executed, and per advice of counsel, Ms. Benge executed the Mabel Isabel Molero Quatroy Revocable Living Trust ("the Trust") on June 28, 2001. According to the Trust Agreement, and specifically paragraph I(C)(a):

> The first trust shall contain an undivided ONE HUNDRED PERCENT (100%) interest of any of Settlor's property not specifically designated to any other trust. This trust shall be known as THE MABEL ISABEL MOLERO QUATROY REVOCABLE LIVING TRUST FOR THE BENEFIT OF THE JAMES P. QUATROY IRREVOCABLE TRUST," DOROTHY L. BENGE AND BONNIE LOPEZ PIERSON are to be the initial trustee of said trust. The trustee is directed to utilize the interest to be received by JAMES P. QUATROY either by operation of law or as beneficiary for his health, education, care and welfare.

As Ms. Quatroy was the recipient of various royalty payments from various royalty payors, copies of the Trust and/or an Extract of Trust and separate Assignments were distributed to the various royalty payors.[1] All royalty payors, with the exception of Bass Enterprises Production Company ("Bass"), accepted a copy of the Trust and/or Extract of Trust and separate Assignments and began paying all royalties previously paid to Ms. Quatroy to the Trust. Bass, unsatisfied with the Trust and original Act of Assignment, never paid any royalties to the Trust, instead insisting on new documentation from the Trust. Ms. Quatroy died on January 19, 2002.

On June 23, 1999, BankPlus extended a loan to Michael Donnelly, a business associate and friend of Ms. Quatroy's only descendant, her son James Quatroy. James Quatroy executed various collateral assignments of royalty, etc in favor of Mr. Donnelly. Specifically, Mr. Quatroy granted a security interest in "[g]rantor's interest, now or in the future, in the following Oil, Gas and Mineral Leases, unitization agreements or other agreements affecting the minerals or collateral."

In essence, BankPlus asserts that the money on deposit in the registry of the court is subject to be seized collateral because the money was inherited by James Quatroy and not donated to any trust. Thus, as an alleged judgment-creditor, Bank Plus and/or Michael Donnelly claim a security interest in property owned by James P. Quatroy.[2] The Trust, however, claims

---

[1] The Act of Assignment transferring Ms. Quatroy's Bass royalties to the Trust was executed on June 28, 2001.

[2] Mr. Donnelly and BankPlus contend that the Trust was improperly formed and, thus, Ms. Quatroy's royalties passed to her Succession. As such, Mr. Donnelly and BankPlus claim right to those royalties under the theory that the royalties are part of James Quatroy's assigned

rights to the monies in the registry of the court because it says those funds have been legitimately transferred into the Mabel Isabel Molero Quatroy Revocable Living Trust.  On June 26, 2002, and June 10, 2003, BankPlus and Mr. Donnelly filed notices of *lis pendens* on the Bass royalties.  As a result, Bass refused to pay any royalties to any party, instead depositing the money into the registry of the court.

## II.   LAW AND ANALYSIS

### A.   Law on Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (emphasis added).  Thus, if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith

---

collateral as a result of an after acquired-property clause.

Radio Corp., 475 U.S. 574, 587 (1986).

### B.   Validity of Mandate

Neither the Trust nor BankPlus disputes that Dorothy Benge was granted a valid Power of Attorney over Ms. Quatroy's assets.  However, BankPlus contends that the Power of Attorney was not sufficient to have authorized Ms. Benge to set up a trust or make a donation to the trust.

In order for a mandatary to make donations on behalf of the principal, there must be express authority in writing.  La. C. C. art.2997.  Louisiana Civil Code Article 2997 states, in pertinent part:

> Authority also must be given expressly to: (1) making an inter vivos donation, either outright or to a new or existing trust or other custodial arrangement, and, when also expressly so provided, to impose such conditions on the donation, including, without limitation, the power to revoke, that are not contrary to the other express terms of the mandate.

An additional requirement is that the contract of mandate authorizing the donation of immovable property must be made in the same form as a donation of immovable property, namely a notarial act.  La. C. C. arts.1536 and 2993.  The Power of Attorney in the present case was made by a notarial act.  Provision six (6) of the Power of Attorney authorizes Ms. Benge to:

> sell, quit-claim, donate, partition, exchange, compromise, mortgage, assign, lease and/or pledge any or all property, interest or rights of any kind owned or to be acquired by principal, including rights in corporeal and incorporeal property, movables and immovables (specifically including all real estate interest owned by principal, wherever located), and to receive and receipt for any sums or rights received thereby. (Emphasis added).

Additionally, paragraph seven (7) of the Power of Attorney grants Ms. Benge the power to:

> [e]xecute in connection with the sale, quit-claim, donation, partition, exchange, compromise, mortgage, assign, lease, and/or pledge of property on behalf of principal, any documents or agreements necessary to accomplish the foregoing, containing such terms as agent in agent/'s sole discretion deems advisable, including security clauses and confession of judgment.

According to Louisiana Civil Code Article 2997, a principal needs to grant a mandatary authority to make inter vivos donations by making the mandate express and in writing. Paragraphs six (6) and seven (7) of the Power of Attorney clearly state that Ms. Benge, as a mandatary, with power of attorney, can donate "any or all property, interest or rights of any kind owned or to be acquired by the principal Ms. Quatroy." Such language clearly and unambiguously establishes express authority required by Article 2997.

BankPlus incorrectly states that a power of attorney must specifically grant authority to establish a trust. BankPlus cites Succession of Aucoin for this proposition. 771 So.2d 286, 1999-2171 (La.App. 1 Cir. 11/8/2000), in which the First Circuit held that the Legislature, in enacting Article 2997, sought to eliminate arguments regarding whether the power to donate was given by requiring that the power to donate immovable property on behalf of another be expressly stated in the power of attorney. Id. at 288. The court refused to infer the power to donate from the general language of the power of attorney and further held that reasonable inferences cannot establish an agent's authority to donate where that authority must, by law, be expressed. Id.

The Trust correctly interprets <u>Succession of Aucoin</u> to mean that a power of attorney must expressly give the power to donate, but that it need not specifically give the power to donate to a trust.  The Power of Attorney at issue contains the express language that the mandatary, Ms. Benge, can donate immovable property on behalf of the principal, Ms. Quatroy.  Therefore, Ms. Benge, according to Article 2997, had authority to create the Revocable Living Trust Agreement on behalf of Ms. Quatroy and donate her property to that Trust.

### C.    Creation of the Trust

A trust may be created only be authentic act, La. R.S. 9:1752 (2005).  An authentic act is a writing executed by a notary public, or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. La. C. C. art.1883.  In the instant case, the Trust is one validly created by authentic act by Dorothy Benge, who had power of attorney and express authority to donate.  Accordingly, Ms. Benge set up a trust and executed all documents necessary for the creation of that trust.  Thus, Dorothy Benge validly created the Mabel Isabel Molero Quatroy Revocable Living Trust.

### D.    Assignment of Royalty Interest and Other Property to the Trust

The Trust Agreement signed by Dorothy Benge as agent and attorney-in-fact for Mabel Isabel Molero Quatroy on June 28, 2001, donated all of Ms. Quatroy's property to a revocable living trust. That Trust was established for the benefit of James Quatroy Irrevocable Trust.  The Trust Agreement states "[t]he trust shall contain an undivided ONE HUNDRED PERCENT (100%) interest of any of [Ms.Quatroy;s] property not specifically designated to any other trust."

There need not be specific language of conveyance in the trust instrument, provided it is clear that title is being transferred to the trustee, because the creation of a trust automatically and by definition effects a transfer of title to the trust property pursuant to La. R.S. 9:1731 (2005). "The trust instrument must identify the property being transferred in trust either specifically, as in a description of land, *or generally*, as under a universal legacy." Grant v. Grant, 810 So.2d 1226, 35, 635 (La.App. 2 Cir. 2/27/02) (citing 11 Leonard Oppenheim & Sidney Ingram, Louisiana Civil Law Treatise, Trusts § 102 (1977)) (emphasis added). In the Trust at issue, the property donated to the trust is described generally.

The Bass royalty payments are included in the word "property," and those items of property have not been designated to any other trust. Therefore, by Ms. Quatroy's express intent, the royalty payments from Bass were donated to the Trust on June 28, 2001. In addition, though not necessary, Ms. Quatroy executed an Assignment on June 28, 2001, with respect to her Bass royalties[3]. In that Assignment, Ms. Quatroy:

> transfers, assigns and sets over unto THE MABEL ISABEL MOLERO QUATROY REVOCABLE LIVING TRUST...all of the rights, title and interest, MABEL ISABEL MOLERO QUATROY has in and to an Oil and Gas Lease, executed by Bass Enterprises Production Company (owner number 06981) including all rights to sue for, collect and receipt for the indebtedness due.

The language included in the Trust generally, but properly, described the property to be transferred into the trust. Thus, all such property, including Ms. Quatroy's Bass royalties, were

---

[3] Ms. Quatroy also executed Acts of Assignments to the Trust with respect to royalties from various other companies. It is significant to the Court that all payors of royalty payments accepted the Trust and Assignment language as sufficient evidence of Ms. Quatroy's intentions and evidence of the actual ownership of the royalties and began paying royalties into the Trust.

properly donated into the Trust.  The Act of Assignment of June 28, 2001, merely served as clarification and proves Ms. Quatroy's intention to transfer those royalties to the trust[4].

## III.    CONCLUSION

Dorothy Benge had power of attorney, which gave her the power to "donate."  Therefore, Ms. Benge had the authority to set up a trust, and she validly executed the necessary documents to create the Mabel Isabel Molero Quatroy Revocable Living Trust.[5]  Through the general language of the trust, Ms. Quatroy donated all of her property to the Trust.[6]  Given that the validly created Trust contains a "Spendthrift Clause," which states, "[Ms. Quatroy's] interests and those of other Beneficiaries in the principal and/or income of the Trust shall not be subject to the claim or claims of their creditors or others, shall not be subject to legal process, and may not be voluntarily alienated or encumbered before actual receipt by the Beneficiary," James Quatroy

---

[4] Due to Bass's dissatisfaction with the language in the Trust and original Act of Assignment of June 28, 2001, Ms. Benge, acting for the Trust, executed two additional Acts of Assignment, each dated November 11, 2001, and June 13, 2002, respectively..  BankPlus argues that the Assignment of Mineral Royalty of June 13, 2002, was ineffective because Ms. Benge's Power of Attorney lapsed upon Ms. Quatroy's death on April 30, 2000.  The Court does not believe either additional Act of Assignment is relevant because the Trust document sufficiently described all property to be transferred to the Trust and, thus, was sufficient in transferring that property to the Trust.

[5] BankPlus cites La. Civ. Code art. 1554 in its argument that the Trust must be recorded in order to affect third persons.  The Court agrees that a Trust which includes immovables must be recorded in order to affect third persons.  However, given that this Trust is a "Spendthrift Trust," recordation is irrelevant here because James Quatroy did not have the right to encumber or alienate any property belonging to the Trust.

[6] In her deposition, Dorothy Benge testified that it was Ms. Quatroy's intent to donate all of her property to the trust for the welfare and protection of her only son, James Quatroy.  As the settlor, Ms. Quatroy's intention controls and is to be ascertained and given effect, unless opposed to law or public policy. La. R.S. 9:1736.

could not have encumbered Trust property.[7] As such, the monies in the registry of the court belong to the Mabel Isabel Molero Quatroy Revocable Living Trust, and neither BankPlus nor Michael Donnelly has any claim to those funds.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment filed on behalf of the plaintiff, The Succession of Mabel Isabel Molero Quatroy, be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the cross Motion for Partial Summary Judgment filed on behalf of the defendant in interpleader, BankPlus, be and the same is hereby **DENIED.**

New Orleans, Louisiana, this 3rd day of August, 2005.

---

[7]Even if this Court were to hold the Trust invalid, Ms. Quatroy's royalty interests would have passed to her Succession. An affidavit from Melinda Benge Brown states that "[t]he monies currently in the registry of the court in this case do not involve any funds or property described in the Collateral Mortgage dated June 25, 1999 or the Assignment of Mortgage dated July 14, 1999. Thus, BankPlus and Michael Donnelly, neither of whom hold any judgments against James Quatroy, Mabel Quatroy, the Succession of Mabel Quatroy, or the Mabel Quatroy Revocable Living Trust, would still hold no claim to the funds in the registry of the court.

_____
**G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE**